UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE INGRAM,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>B. HAMKAR, et al.,<br><br>　　　　　Defendants. | No. 2: 13-cv-2567 GEB KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Introduction

　　　　Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' summary judgment motion. (ECF No. 19.) Defendants argue that plaintiff failed to exhaust administrative remedies. For the reasons stated herein, the undersigned recommends that defendants' motion be granted.

Exhaustion of Administrative Remedies

　　　　The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

1   wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

2   Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See Booth, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7. Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v.

Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock, 549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision[1] "that the burdens outlined in Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996), should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. See Albino, 697 F.3d at 1030-31.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where

---

[1] See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process. Id. at 1032.

3

appeal granted at second level and no further relief was available).

Where a prison system's grievance procedures do not specify the requisite level of detail for inmate appeals, <u>Sapp</u>, 623 F.3d at 824, a grievance satisfies the administrative exhaustion requirement if it "alerts the prison to the nature of the wrong for which redress is sought." <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." <u>Griffin</u>, 557 F.3d at 1120.

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1120 (9th Cir. 2003), <u>overruled on other grounds by</u> <u>Albino</u>, 747 F.3d 1162.

<u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

5

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on July 30, 2014, (ECF No. 22-2), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

Background

This action proceeds on the original complaint as to defendants Dr. Hamkar, Watch Sergeant Robicheaux and Licensed Vocational Nurse Thorpe. (ECF No. 1.) Plaintiff alleges that on January 5, 2011, defendant Hamkar ordered the confiscation of plaintiff's knee brace. (Id. at 3.) Plaintiff alleges that defendants Thorpe and Robicheaux confiscated the knee brace on January 5, 2011. (Id.) Plaintiff alleges that he told defendants Thorpe and Robicheaux that confiscation of the knee brace would cause damage to plaintiff's knee that the specialist was trying to prevent. (Id.)

Discussion

*Plaintiff's Grievances*

Defendants argue that plaintiff did not submit an administrative appeal alleging confiscation of his knee brace on January 5, 2011, until September 2013, which was denied as

untimely. Defendants state that prior to September 2013, plaintiff submitted appeals related to the use of a knee brace, but none made allegations that defendants confiscated his knee brace. (ECF No. 19-3 at 2-3 (declaration of Health Care Appeals Coordinator Gibson describing his review of plaintiff's grievances filed in 2011.)) The undersigned summarizes these grievances, attached as exhibits to defendants' motion, herein.

On January 5, 2011, plaintiff filed grievance 10-10095 alleging that on October 8, 2010, the orthopedist recommended a knee brace. (ECF No. 19-3 at 7.) Plaintiff alleged that on October 22, 2010, defendant Hamkar ordered the knee brace, which plaintiff paid for himself. (Id.) Plaintiff alleged that when he received the brace, he noticed that it had been altered by defendant Hamkar. (Id.) Plaintiff requested that he be given the brace in unaltered form, as this is what he paid for. (Id.)

On February 16, 2011, Nurse Linggi partially granted grievance 10-10095 at the first level. (Id. at 9.) The response stated that Nurse Linggi interviewed plaintiff on February 14, 2011, regarding his grievance. (Id.) Nurse Linggi and plaintiff discussed that a medical appliance is subject to safety and security policy. (Id.) While plaintiff stated that the brace was "rendered useless," plaintiff was advised that his physician would be able to give him more information on the effectiveness of the brace. (Id.) The response also states, "It is noted that you currently have a new brace that you report to be effective." (Id.) Plaintiff did not appeal this grievance to the next level of review. (Id. at 3.)

On April 23, 2011, plaintiff filed grievance 11-14068. (Id. at 11.) Plaintiff alleged that he had filed over 10 requests to see the doctor regarding the pain in his knee and the referral for a knee brace. (Id.) Plaintiff requested that he be seen by a doctor. (Id.) On May 23, 2011, this grievance was granted at the first level of review by defendant Hamkar. (Id. at 13.) The response states that defendant Hamkar evaluated plaintiff on May 23, 2011. (Id.) On exam, plaintiff had anterior laxity of the knee consistent with re-injury of his right ACL. (Id.) Plaintiff had repeat surgery on February 23, 2011, and currently got around with a cane. (Id.) Defendant Hamkar stated that he had placed an order for a knee immobilizer. (Id.)

////

7

On August 24, 2011, plaintiff filed grievance 11-25109. (Id. at 15.) Plaintiff alleged that he had pain when walking. (Id.) Plaintiff alleged that prison staff refused to provide him with a medical appliance, i.e., a knee brace, prescribed by a specialist. (Id.) Plaintiff requested that he be provided with an unaltered knee brace. (Id.) On November 9, 2011, this grievance was partially granted at the first level of review by Nurse Linggi. (Id. at 17.) The response states that a double hinged knee brace was approved by both medical and custody staff and should be shipped to the prison within four weeks. (Id.) Upon arrival, the brace would be forwarded to plaintiff. (Id.)

Plaintiff submitted "one or two" other health care appeals with similar concerns between August and October 2011. (Id. at 4.) These appeals were screened out because plaintiff failed to date and sign them, or because they were duplicative of the appeals described above, that were already received and being processed. (Id.)

On September 14, 2013, plaintiff filed grievance 13-38623. (Id. at 19.) Plaintiff alleged that on January 5, 2011, defendants Thorpe and Robicheaux confiscated his knee immobilizer, i.e. knee brace. (Id.) Plaintiff alleged that defendant Thorpe stated that defendant Hamkar ordered that the knee immobilizer be taken. (Id.) Plaintiff alleged that he told defendant Thorpe that he was awaiting an operation. (Id.) Defendant Thorpe tried to offer plaintiff the altered brace. (Id.) On September 30, 2013, this grievance was cancelled as untimely. (Id. at 21.)

Attached as exhibits to plaintiff's complaints are copies of some of the grievances submitted by defendants. (See ECF No. 1 at 5-24.) Also attached are copies of grievances filed by plaintiff in 2010, i.e., before the alleged January 5, 2011 confiscation of plaintiff's knee brace. (Id.) Also attached are copies of memorandums dismissing grievances on procedural grounds. (Id.)

*Analysis*

Defendants argue that the only grievance submitted by plaintiff alleging that defendants confiscated his knee brace on January 5, 2011, was grievance 13-38623, which was cancelled as untimely.

////

The undersigned agrees with defendants that the three grievances filed by plaintiff in 2011 did not raise the issue of defendants' alleged confiscation of the knee brace. The grievance that did raise this claim, i.e., grievance 13-38623, was cancelled as untimely. Thus, this grievance did not satisfy the PLRA's requirements for administrative exhaustion. See Woodford, 548 U.S. at 90-93 (an untimely grievance does not satisfy the PLRA exhaustion requirements).

In his opposition, plaintiff alleges that he did not include his claims regarding the confiscation of his knee brace in grievance 10-10095 because the alleged confiscation occurred after he filed grievance 10-10095. (ECF No. 20 at 1-2.) The undersigned understands plaintiff to be alleging the following sequence of events. Prior to January 5, 2011, plaintiff had possession of the at-issue unaltered knee brace. On January 5, 2011, defendants came to plaintiff's cell and attempted to give him the altered knee brace he had paid for in exchange for the unaltered knee brace. Plaintiff refused to take possession of the altered knee brace. Plaintiff then filed grievance 10-10095, in which he complained that defendants had altered the knee brace he paid for. Later that day, after plaintiff submitted grievance 10-10095, defendants confiscated the unaltered knee brace plaintiff had originally possessed. The confiscation of this unaltered knee brace is the subject of the instant action.

In his opposition, plaintiff argues that he could not file a new and separate grievance regarding the confiscation of his unaltered brace because he had earlier that day filed grievance 10-10095, challenging the alteration of the knee brace he paid for. In this argument, plaintiff apparently relies on Section 3084.2(a)(1) of the California Code of Regulation, which provides that inmates are limited to one issue or related set of issues per each administrative appeal. Plaintiff suggests that he could not file a separate grievance regarding the confiscation of his unaltered knee brace because it was related to the issues raised in 11-10095, and Section 3084.2(a)(1) limited him to one grievance regarding related issues.

As noted by defendants in the reply to plaintiff's opposition, plaintiff could have requested to amend grievance 10-10095 at the first level of review, since the confiscation of his unaltered knee brace had occurred earlier that day and was related to the issues raised in that appeal. For that reason, plaintiff's suggestion that the regulations prohibited him from filing an

9

1  administrative grievance challenging the confiscation of his unaltered knee brace is without merit.

2  Plaintiff also suggests that he was not required to raise the issue of the confiscation of his unaltered knee brace in an administrative grievance because the problems he had with knee braces were ongoing. A claim is administratively exhausted if it is a continuation of a problem raised by a prior fully exhausted administrative grievance. Victory v. Barber, 2009 WL 2986418, *7-9 (E.D. Cal. 2009). Plaintiff did not exhaust grievances 10-10095 or 11-25109 to the Third Level of review, which he could have done as they were only partially granted. Therefore, assuming the confiscation of his unaltered knee brace was part of the ongoing problems raised in grievances 10-10095 and 11-21509, they did not administratively exhaust the at-issue claim.

Because defendant Hamkar granted grievance 11-14068 at the first level of review, this grievance exhausted the claims raised in that grievance. However, the undersigned does not find that this grievance put defendants on notice that plaintiff was challenging the alleged confiscation of his unaltered knee brace on January 5, 2011. Grievance 11-14068, as indicated by defendant Hamkar's response, challenged the medical care plaintiff received following surgery on February 23, 2011, i.e., issues not related to the alleged confiscation of plaintiff's unaltered knee brace on January 5, 2011. For these reasons, the undersigned finds that grievance 11-14068 did not administratively exhaust the at-issue claim.

In his opposition, plaintiff also states that after defendants confiscated his unaltered knee brace, he filed an Inmate Request for Interview form, regarding the confiscation. (ECF No. 20 at 2.) A copy of this form is attached to plaintiff's opposition. (Id. at 3.) Plaintiff suggests that this form satisfied the administrative exhaustion requirement. As indicated by the legal standards set forth above, an Inmate Request for Interview form does not satisfy the requirements for administrative exhaustion.

For the reasons discussed above, the undersigned finds that plaintiff has failed to exhaust his administrative remedies with respect to the claim raised in the instant action: defendants alleged confiscation his unaltered knee brace on January 5, 2011.

Accordingly, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 19) be granted; and this action be dismissed in its entirety, without prejudice, based on

1  plaintiff's failure to exhaust administrative remedies.

2  These findings and recommendations are submitted to the United States District Judge
3  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
4  after being served with these findings and recommendations, any party may file written
5  objections with the court and serve a copy on all parties.  Such a document should be captioned
6  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
7  objections shall be served and filed within fourteen days after service of the objections.  The
8  parties are advised that failure to file objections within the specified time may waive the right to
9  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10  Dated:  January 29, 2015

12  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

14  in2567.sj